The court having inspected the CJC and Halfway House Annex on October 27, 1997;

The court having held a formal hearing on October 27, 1997 and an informal conference on October 28, 1997 where the status of the facilities and the defendants' compliance efforts were discussed;

The court having considered the submissions of the parties; and

For the reasons set forth in the court's opinion of this date;

**IT IS** on this 26th day of November, 1997;

**ORDERED** that plaintiffs' motion to impose monetary sanctions on defendants is **DENIED.**

Harlan Clement GIBBS # 19446039

v.

**BUREAU OF PRISON OFFICE, FCI Cumberland Administrative Staff Members, Warden Dennis Bidwell,[1] Associate Warden Les Ruth, Executive Assistant Stephen Finger, Chief Psychologist Lisa Morshead, Psychologist Mark Bono, Psychologist Jennie Kaufman, Health Services Administrator Marie Grahame, Clinical Director Sandra Howard, Physician Assistant Melu–Jean Rongo, Physician Assistant Alejandro Victoria, The United States of America.**

No. CIV. A. H–97–452.

United States District Court, D. Maryland.

Oct. 22, 1997.

---

1. The Clerk of Court shall amend the caption of this case to reflect the full and proper spelling of defendants' names and, for reasons stated herein, to reflect the United States of America as a party defendant.

Harlan Clement Gibbs, pro se.

Larry D. Adams, Asst. U.S. Atty., for defendants.

### MEMORANDUM

ALEXANDER HARVEY, II, Senior District Judge.

On February 13, 1997 plaintiff, presently incarcerated at the Federal Correctional Institution in Butner, North Carolina, filed a *pro se* action alleging an Eighth Amendment violation of his right to medical and mental health treatment at the hands of numerous prison officials and health care providers at the Federal Correctional Institution in Cumberland, Maryland.[2] Although plaintiff captioned his civil rights action as one arising under 42 U.S.C. Section 1983, this Court, noting that defendants are federal employees or contractors, finds that jurisdiction arises pursuant to 28 U.S.C. Section 1331. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The case now is before the Court on defendants' unopposed[3] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Paper No. 25), which shall be treated as a motion for summary judgment. No hearing is needed to resolve the issues raised in this case.

▮ Because jurisdiction is conferred pursuant to *Bivens,* this Court lacks jurisdiction to consider awarding money damages against the named defendants in their *official* capacities. *See Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus to the extent that he seeks to sue the named defendants in their official capacities, plaintiff is bringing suit against the United States. *Id.* However, an action for money damages cannot be brought against the United States without a waiver of sovereign immunity. *See United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). Plaintiff does not allege—and defendants do not concede—that such a waiver of sovereign immunity has

---

2. At the time he filed suit, plaintiff was incarcerated at the Federal Correctional Institution in Cumberland, Maryland. On April 14, 1997 plaintiff was transferred to FCI–Butner. Inasmuch as plaintiff sought injunctive relief requiring FCI–Cumberland personnel to provide him appropriate medical and mental health treatment, this portion of plaintiff's claim has been rendered moot by said transfer. *See Magee v. Waters,* 810 F.2d 451, 452 (4th Cir.1987).

3. Pursuant to the dictates of *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), the Clerk of Court on June 24, 1997 informed plaintiff that defendants had filed a dispositive motion; that plaintiff had seventeen days in which to file written opposition to that motion; and that if plaintiff failed to respond, summary judgment could be entered against him without further notice. *See* Paper No. 26. Although plaintiff twice requested and was granted extensions of time (*see* Paper Nos. 27–30), he has chosen not to respond.

occurred in the instant case. Accordingly this Court lacks subject matter jurisdiction over plaintiff's claim for money damages against the United States and/or the named defendants for actions taken in their official capacity.

■ As set forth herein, this Court finds that due to recent legislative changes, it also lacks jurisdiction to consider plaintiff's claim for money damages against defendants in their *individual* capacities.

Prior to 1996 federal prisoners asserting *Bivens* claims were required to exhaust administrative remedies only when seeking injunctive relief. *See McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). At the time *McCarthy* was decided, federal law required exhaustion of administrative remedies only by prisoners bringing suit pursuant to 42 U.S.C. Section 1983—i.e., *state* prisoners.[4] The *McCarthy* court, noting that congressional intent is of paramount importance to any exhaustion inquiry, *id.* at 144, 112 S.Ct. at 1085–86, concluded that CRIPA had no direct application in a *Bivens* claim filed by a *federal* prisoner seeking money damages against federal prison officials. *Id.* at 150, 112 S.Ct. at 1089.

The recently enacted Prison Litigation Reform Act [PLRA], Pub.L. No. 104–134, 110 Stat. 1321 (April 26, 1996)[5] amended CRIPA. Among its many changes is a requirement that prisoners must exhaust available administrative remedies prior to filing civil actions. Specifically, the Act provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, *or any other federal law, by a prisoner confined in any jail, prison, or other correction facility* until such Administrative remedies as are available are exhausted.

42 U.S.C. Section 1997e (as amended)(emphasis added). Although no court has yet squarely ruled on whether all *Bivens* actions are subject to the exhaustion requirement of the PLRA,[6] defendants here contend that *Bivens* actions fall within the meaning of the PLRA phrase "other federal law" because it is well established that *Bivens* suits are the federal analogs of Section 1983 actions. *See* Paper No. 25 at 15–16.

Although statements in the debates over the PLRA do not clarify the issue,[7] it is clear that the Federal Bureau of Prisons' four step process for resolution of prisoner complaints could be used to resolve the underlying dispute in cases such as this.[8] The procedure— required before a federal prisoner may seek injunctive relief in federal court—already applies to complaints that relate to any aspect of imprisonment except for tort claims, Inmate Accident Compensation Claims, Freedom of Information or Privacy Act claims. 28 C.F.R. § 542.10 and § 542.12.

Initially a prisoner must attempt to informally resolve his complaint with staff. 28

---

4. Such exhaustion was mandated by the Civil Rights of Institutionalized Persons Act [CRIPA], 42 U.S.C. Section 1997e(a)(1)(1981).

5. The PLRA is codified at 42 U.S.C. Section 1997e(a)(1996).

6. In *Zehner v. Trigg*, 952 F.Supp. 1318 (S.D.Ind. 1997), the district court granted the government's motion for judgment on the pleadings on the basis that state prisoners, who claimed exposure to asbestos while working in the prison kitchen, had not yet developed actual "physical injury" as required under the PLRA. Although the *Zehner* court did not base its decision on the question of statutory interpretation at issue here, the court did note that

> "[s]ince *McCarthy* ... Section 1997e has been substantially altered. The definition of prisoner, added to Section 1997e as part of the

PLRA, appears to be broad enough to reach prisoners in federal custody. *See* 42 U.S.C. Section 1997e(h). In addition, the language in Section 1997e(a) is broader now than the language that helped persuade the Court in *McCarthy* that Section 1997e did not apply to *Bivens* claims. While Section 1997e(a) formerly referred to actions brought pursuant to 42 U.S.C. Section 1983, it now refers to actions brought under Section 1983 or any other federal law."

*Id.* at 1334.

7. *See* 141 Cong. Rec. S7498–01, *27526 (daily ed. May 25, 1995)(statement of Senator Kyl stating that provisions regarding mental and emotional injury apply to suits brought under Section 1983).

8. Indeed, the BOP's administrative process of review is far superior to the system in place within Maryland's state Division of Correction.

C.F.R. § 542.13(a). If attempts at informal resolution are unsuccessful he may file a written complaint to the warden[9] on a prescribed form. This must be done within fifteen days of the incident giving rise to the complaint unless the prisoner can demonstrate a valid reason for delay. 28 C.F.R. § 542.13(b). In an emergency situation where the prisoner's health or welfare is threatened, the warden must respond within 48 hours of receipt of the complaint. Otherwise he has fifteen days from the date the complaint is filed.[10] These deadlines may be extended once by the amount of time originally allowed for a response. 28 C.F.R. § 542.14.

If the prisoner is not satisfied with the warden's response he may appeal to the Regional Director. This must be done within twenty days from the date of the warden's decision. 28 C.F.R. § 542.15. The Regional Director must respond within thirty days from the date the appeal is filed. This time may be extended by an additional thirty days. 28 C.F.R. § 542.14.

Finally, if the prisoner is not satisfied with the response of the Regional Director he may appeal to the Office of General Counsel. This must be done within thirty days from the date of the Regional Director's response. 28 C.F.R. § 542.15. The General Counsel must respond within thirty days from the date the appeal is filed. This time may be extended by an additional thirty days. 28 C.F.R. § 542.14.

Full exhaustion of administrative procedures by federal prisoners prior to initiating *Bivens* actions is not without some precedent. Although Congress had never specifically legislated that federal prisoners exhaust this procedure prior to filing a *Bivens*[11] type action, numerous federal courts have im-

posed such a requirement. *See Davis v. Keohane,* 835 F.2d 1147 (6th Cir.1987) (and cases cited therein). This requirement has been based on policies of respect for administrative autonomy and judicial economy. *Lyons v. United States Marshals,* 840 F.2d 202, 204 (3rd Cir.1988) (citation omitted). A judicially imposed exhaustion requirement requires a balancing of "the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy,* 503 U.S. at 146, 112 S.Ct. at 1087. Exhaustion is not required where it would cause undue prejudice to the plaintiff, if the administrative remedy is inadequate to provide the relief requested or if the agency is biased or has predetermined the issue. *Id.* at 149, 112 S.Ct. at 1088–89. Since the decision in *McCarthy* at least one District Court had concluded that where a federal prisoner seeks both damages and injunctive relief, exhaustion of the administrative remedy process should be required.[12] *Irwin v. Quinlan,* 791 F.Supp. 301, 303 (S.D.Ga.1992). *See also Rourke v. Thompson,* 11 F.3d 47, 50 (5th Cir.1993) (federal prisoner seeking only injunctive relief must exhaust). This practice generally has been followed in this Court. Although the injunctive portion of plaintiff's request for relief has been rendered moot here, the Court notes that at no time during the pendency of this action has plaintiff completed any but the initial administrative step in the four-step process described above. *See* Paper No. 25, Exhibit A at 2, para. 7. This failure to follow through in an attempt to resolve plaintiff's alleged need for medical care convinces the undersigned that the request for money damages should be dismissed at this time, for failure to complete administrative exhaustion of plaintiff's underlying claim.[13]

---

9. If a prisoner believes that he would be adversely affected if his complaint became known at the institution where he is housed he may file his complaint directly to the Regional Director. 28 C.F.R. § 542.13(c).

10. A complaint is considered filed when a receipt is issued for it. 28 C.F.R. § 542.14.

11. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

12. This is consistent with the approach taken by many courts prior to the *McCarthy* decision. *Veteto v. Miller,* 794 F.2d 98, 100 (3rd Cir.1986); *Miller v. Stanmore,* 636 F.2d 986, 991 n. 5 (5th Cir.1981).

13. In so concluding, the Court notes that the uncontroverted health records provided by defendants (*see* Paper No. 25, Exhibits B and C and Attachments thereto) convincingly demonstrate that defendants attempted to meet plaintiff's physical and mental health needs during the sev-

Accordingly a separate Order shall be entered granting defendants' dispositive motion and closing this case.

### *ORDER*

In accordance with the foregoing Memorandum, IT IS this 22nd day of October, 1997 by this Court hereby **ORDERED:**

1. That the United States of America **IS SUBSTITUTED** as a party defendant on behalf of all other defendants in their official capacities;

2. That the Clerk of Court **AMEND** the caption of this case to reflect the full and complete spelling of defendants' names;

3. That plaintiff's request for injunctive relief (contained in Paper No. 1) **IS DENIED AS MOOT;**

4. That defendants' unopposed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Paper No. 25), being treated as a motion for summary judgment, **IS GRANTED;**

5. That judgment **IS ENTERED** in favor of all defendants and against plaintiff;

6. That the Clerk of Court **CLOSE** this case; and

7. That the Clerk of Court **MAIL** a copy of this Order, together with the foregoing Memorandum, to plaintiff and to Assistant United States Attorney Larry D. Adams, 6625 United States Courthouse, 101 West Lombard Street, Baltimore, Maryland 21201–2692.

eral months he was confined at FCI–Cumberland.